ORAL ARGUMENT NOT YET SCHEDULED

No. 24-5152 (consolidated with No. 24-5166)

# United States Court of Appeals
# for the District of Columbia Circuit

ARIANA CORTES AND LOGAN KARAM,

*Plaintiffs-Appellants/Cross-Appellees,*

v.

NATIONAL LABOR RELATIONS BOARD,

*Defendant-Appellee/Cross-Appellant*

On Appeal from the United States District Court
for the District of Columbia, No. 1:23-cv-02954-JEB

## PRINCIPAL BRIEF OF
## DEFENDANT-APPELLEE/CROSS-APPELLANT
## (DEFERRED APPENDIX)

JENNIFER A. ABRUZZO
  *General Counsel*
JESSICA RUTTER
  *Deputy General Counsel*
NANCY E. KESSLER PLATT
  *Associate General Counsel*
DAWN L. GOLDSTEIN
  *Deputy Associate General
  Counsel*

KEVIN P. FLANAGAN
  *Deputy Assistant General Counsel*
CHRISTINE FLACK
  *Supervisory Attorney*
PADRAIC J. LEHANE
  *Trial Attorney*
MARIANNE L. BOWERS
  *Trial Attorney*

NATIONAL LABOR RELATIONS BOARD
1015 Half Street, S.E., 4th Floor
Washington, D.C. 20570
(202) 273-4202

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Following Circuit Rule 28(a)(1), Appellee/Cross-Appellant National Labor Relations Board (NLRB) certifies that:

## I.    Parties and Amici

The parties to this case are the NLRB, an agency of the United States government, and Ariana Cortes and Logan Karam. Cortes and Karam are individuals, each of whom filed a representation petition with the NLRB seeking an election to determine whether employees at their workplace no longer wish to be represented by the union. There are currently no *amici curiae*.

## II.    Rulings Under Review

The ruling under review is the April 10, 2024 Order and accompanying Memorandum Opinion of Chief Judge James E. Boasberg granting the NLRB's Motion to Dismiss and dismissing the case without prejudice in *Cortes v. NLRB*, Civil Action No. 23-2954 (JEB), 2024 WL 1555877 (D.D.C. Apr. 10, 2024).

## III.    Related Cases

This case has not previously been on review before this Court or any other court, except in the proceedings before the U.S. District Court

for the District of Columbia, as described above. The NLRB is not aware of any related cases as defined by Circuit Rule 28(a)(1)(C).

# TABLE OF CONTENTS

Table of Authorities.................................................................i

Glossary of Abbreviations .......................................................vii

Counterstatement of Jurisdiction..............................................1

Counterstatement of Issues Presented For Review ..................2

Counterstatement of the Case .................................................4

   I.  Structure and Functions of the NLRB ..............................4

   II.  Administrative Proceedings............................................7

   III. District Court Proceedings ...........................................10

   IV. Recent Developments...................................................13

Summary of the Argument .....................................................13

Standard of Review ...............................................................15

Argument..............................................................................16

   I.  Regardless of whether Appellants lacked standing at the time of the district court's dismissal, any justiciability barrier no longer exists, given that Appellants again have administrative proceedings pending in front of the Board. ......................16

   II.  This Court may partially affirm the district court's dismissal of the complaint because Congress has jurisdictionally barred injunctive relief in cases involving or growing out of labor disputes. ..................19

   III. The district court correctly dismissed Appellants' case based on their failure to demonstrate causal harm..........................................24

      A.  To maintain a constitutional challenge to statutory removal protections, the challenger must show that the protections caused actual harm.........................................................25

      B.  None of Appellants' arguments changes the import of *Collins*. .34

   IV. This case should be remanded to the district court with instructions to dismiss the Amended Complaint with prejudice to the extent it seeks non-injunctive relief....................................................42

   V.  Appellants failed to present a plausible separation-of-powers claim that could survive a motion to dismiss. ...............................................45

A.  Supreme Court precedent uniformly supports removal protections for multimember commissions like the Board. .............. 47

B.  Appellants' reliance on a "substantial executive power" test is legally untenable................................................................... 52

C.  Appellants' remaining arguments for why *Humphrey's Executor* does not apply are unavailing. ......................................... 60

Conclusion ........................................................................................ 66

# TABLE OF AUTHORITIES

<u>Cases</u>

*Alivio Medical Center v. Abruzzo*,
  No. 24-cv-7217, 2024 WL 4188068 (N.D. Ill. Sept. 13, 2024).........46, 63
*Alpine Sec. Corp. v. FINRA*,
  121 F.4th 1314 (D.C. Cir. 2024)...........................................................38
*Are v. Y & H Corp.*,
  546 U.S. 500 (2006)...............................................................................21
*Ares Collective Grp. LLC v. NLRB*,
  2024 WL 4581436 (D. Ariz. Oct. 25, 2024)...........................................31
*Armco, Inc. v. United Steelworkers*,
  280 F.3d 669 (6th Cir. 2002)..................................................................24
*Armstrong v. Exceptional Child Ctr., Inc.*,
  575 U.S. 320 (2015)...............................................................................20
*Axon Enterprise, Inc. v. FTC*,
  598 U.S. 175 (2023)...........................................................................23, 38
*Belizan v. Hershon*,
  434 F.3d 579 (D.C. Cir. 2006).........................................................43, 44
*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...............................................................................16
*Bhatti v. FHFA*,
  97 F.4th 556 (8th Cir. 2024)...........................................30, 32, 34, 44
*Boys Markets, Inc. v. Retail Clerks Union*,
  398 U.S. 235 (1970)...............................................................................20
*Buffalo Forge Co. v. United Steelworkers*,
  428 U.S. 397 (1976)...............................................................................22
*Calcutt v. FDIC*,
  37 F.4th 293 (6th Cir. 2022).......................................30, 33, 35, 39, 40
*California v. Grace Brethren Church*,
  457 U.S. 393 (1982)...............................................................................41
*CFPB v. CashCall, Inc.*,
  35 F.4th 734 (9th Cir. 2022)..................................................................30
*CFTC v. Nahas*,
  738 F.2d 487 (D.C. Cir. 1984)...............................................................20

*Cochran v. SEC,*
  20 F.4th 194 (5th Cir. 2021) ............................................................ 36
*Collins v. Department of Treasury,*
  83 F.4th 970 (5th Cir. 2023) ................................. 28, 32, 34, 35, 37, 40
*Collins v. Yellen,*
  594 U.S. 220 (2021) .......... 2, 15, 24, 25, 26, 27, 32, 33, 34, 35, 40, 59, 64
*CFSA v. CFPB,*
  51 F.4th 616 (5th Cir. 2022) .................. 27, 28, 29, 30, 33, 35, 38, 40, 44
*Consumers' Research v. CPSC,*
  91 F.4th 342 (5th Cir. 2024) .................. 38, 46, 53, 54, 55, 56, 61, 63, 66
*Nexstar Media, Inc. Grp. v. NLRB,*
  2024 WL 4127090 (N.D. Ohio Aug. 26, 2024) ..................................... 24
*Cortes v. NLRB,*
  2024 WL 1555877 (D.D.C. Apr. 10, 2024) ... 1, 11, 12, 16, 17, 24, 31, 32,
  33, 35, 36, 40
*Couch v. Verizon Commc'ns Inc.,*
  105 F.4th 425 (D.C. Cir. 2024) ........................................................... 42
*Dish Network Corp. v. NLRB,*
  953 F.3d 370 (5th Cir. 2020) ...................................................... 47, 54
*Exela Enter. Sols., Inc. v. NLRB,*
  32 F.4th 436 (5th Cir. 2022) .......................................................... 6, 58
*Foman v. Davis,*
  371 U.S. 178 (1962) ........................................................................ 43
*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.,*
  561 U.S. 477 (2010) ....................................................... 37, 49, 50, 55
*FTC v. Am. Nat. Cellular, Inc.,*
  810 F.2d 1511 (9th Cir. 1987) ........................................................... 64
*Givens v. Bowser,*
  111 F.4th 117 (D.C. Cir. 2024) .................................................... 42, 44
*Humphrey's Executor v. United States,*
  295 U.S. 602 (1935) ................................... 11, 47, 51, 52, 66, 67
*Illumina, Inc. v. FTC,*
  88 F.4th 1036 (5th Cir. 2023) .................................................. 54, 56, 64
*In re Dist. No. 1-Pac. Coast Dist., Marine Eng'rs' Beneficial Ass'n,*
  723 F.2d 70 (D.C. Cir. 1983) ......................................................... 22, 23
*Jacksonville Bulk Terminals, Inc. v. Int'l Longshoremen's Ass'n,*
  457 U.S. 702, (1982) ....................................................................... 20

*Jones v. Ford Motor Co.*,
  85 F.4th 570 (9th Cir. 2023) .................................................. 39
*K & R Contractors, LLC v. Keene*,
  86 F.4th 135 (4th Cir. 2023) .................................................. 30
*Kerwin v. Trinity Health Grand Haven Hosp.*,
  2024 WL 4594709 (W.D. Mich. Oct. 25, 2024) ........................ 31, 46, 63
*Kowal v. MCI Commc'ns Corp.*,
  16 F.3d 1271 (D.C. Cir. 1994) ................................................ 16
*L. Offs. of Crystal Moroney, P.C.*,
  63 F.4th 174 (2d Cir. 2023) .................................................... 30, 33, 35
*Leachco, Inc. v. CPSC*,
  103 F.4th 748 (10th Cir. 2024) .............................. 30, 33, 35, 38, 55, 63
*Leedom v. Kyne*,
  358 U.S. 184 (1958) ........................................................... 17
*Loren Cook Co. v. NLRB*,
  2024 WL 5004534 (W.D. Mo. Nov. 27, 2024) ........................... 46
*Lucia v. SEC*,
  585 U.S. 237 (2018) ........................................................... 26
*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ........................................................... 12, 13, 17
*Matthew A. Goldstein, PLLC v. United States Dep't of State*,
  851 F.3d 1 (D.C. Cir. 2017) .................................................. 15, 16
*McCulloch v. Libbey-Owens-Ford Glass Co.*,
  403 F.2d 916 (D.C. Cir. 1968) ............................................... 18
*Meta Platforms, Inc. v. FTC*,
  723 F. Supp. 3d 64 (D.D.C. 2024) .......................................... 46, 64
*Moats v. Nat'l Credit Union Admin. Bd.*,
  2024 WL 1724271 (S.D. Tex. Apr. 9, 2024) .............................. 22
*Morrison v. Olson*,
  487 U.S. 654 (1988) ........................................................... 48
*CFPB v. Nat'l Collegiate Master Student Loan Tr.*,
  96 F.4th 599 (3d Cir. 2024) .................................................. 30
*Neitzke v. Williams*,
  490 U.S. 319 (1989) ........................................................... 45
*New Negro All. v. Sanitary Grocery Co.*,
  303 U.S. 552 (1938) ........................................................... 24
*NLRB v. Aakash, Inc.*,
  58 F.4th 1099 (9th Cir. 2023) ............................................... 6

*NLRB v. FLRA*,
    613 F.3d 275 (D.C. Cir. 2010) ........................................................... 57

*Okusami v. Psych. Inst. of Wash., Inc.*,
    959 F.2d 1062 (D.C. Cir. 1992) .......................................................... 42

*Overstreet v. Lucid USA Inc.*,
    2024 WL 5200484 (D. Ariz. Dec. 23, 2024) ..................................... 46

*Owen Equip. & Erection Co. v. Kroger*,
    437 U.S. 365 (1978) ............................................................................ 20

*Poe v. Gerstein*,
    417 U.S. 281 (1974) ............................................................................ 41

*Rieth-Riley Constr. Co.*,
    371 NLRB No. 109 (2022) ................................................................... 8

*RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*,
    682 F.3d 1043 (D.C. Cir. 2012) .......................................................... 24

*Ryder v. United States*,
    515 U.S. 177 (1995) ............................................................................ 26

*Seila Law LLC v. CFPB*,
    591 U.S. 197 (2020) .................... 46, 50, 51, 52, 53, 55, 57, 58, 61, 62, 65

*Severino v. Biden*,
    71 F.4th 1038 (D.C. Cir. 2023) .......................................................... 46

*Spring Creek Healthcare Ctr. v. NLRB*,
    2024 WL 4690938 (D.N.J. Nov. 6, 2024) .......................................... 31

*United Pub. Workers v. Mitchell*,
    330 U.S. 75 (1947) .............................................................................. 41

*VHS Acquisition Subsidiary No. 7 v. NLRB*,
    2024 WL 5056358 (D.D.C. Dec. 10, 2024) ....................................... 40

*VHS Acquisition Subsidiary No. 7 v. NLRB*,
    2024 WL 4817175 (D.D.C. Nov. 17, 2024) .................................. 20, 23

*Warth v. Seldin*,
    422 U.S. 490 (1975) ............................................................................ 15

*Wiener v. United States*,
    357 U.S. 349 (1958) ............................................................................ 48

*YAPP USA Auto. Sys., Inc. v. NLRB*,
    2024 WL 4489598 (6th Cir. Oct. 13, 2024) ............................ 30, 33, 38

*YAPP USA Auto. Sys., Inc. v. NLRB*,
    2024 WL 4119058 (E.D. Mich. Sept. 9, 2024) ............................. 46, 63

## Statutes

15 U.S.C. § 53(b) ...................................................................59
15 U.S.C. § 2053(a) ..............................................................53
15 U.S.C. § 2064(g) ..............................................................59
28 U.S.C. § 1292(a)(1) .............................................................1
28 U.S.C. § 1331 .....................................................................1
28 U.S.C. § 1653 ...................................................................19
29 U.S.C. § 107 .....................................................................20
29 U.S.C. § 108 .....................................................................24
29 U.S.C. § 109 .....................................................................21
29 U.S.C. § 113 ...............................................................22, 23
29 U.S.C. § 151 .......................................................................4
29 U.S.C. § 153 .....................................................................64
29 U.S.C. § 153(a) ..............................................6, 10, 54, 64
29 U.S.C. § 153(d) .....................................................4, 6, 59
29 U.S.C. §156 ......................................................................58
29 U.S.C. § 157 .......................................................................4
29 U.S.C. § 159(c) .................................................................58
29 U.S.C. § 160(a) .................................................................55
29 U.S.C. § 160(e) .................................................................60
29 U.S.C. § 160(h) .................................................................23
29 U.S.C. § 160(j) ..................................................................60
29 U.S.C. §§ 101-115 ...............................................1, 2, 14, 20

## Rules

D.C. Cir. Rule 32(e)(1) .............................................................1
Fed. R. Civ. P. 12(b)(6) ..........................................................16
Fed. R. Civ. P. 15(d) ..............................................................19
29 C.F.R. § 102.67(c)-(d) ...........................................................5
Pub. L. No. 63-203, §§ 5, 6(g), 38 Stat. 717, 719–20, 722 (1914)............66

## Regulations

26 Fed. Reg. 3911 (May 4, 1961) ...............................................5

# Other Authorities

Brian D. Feinstein & Daniel J. Hemel, *Partisan Balance with Bite*, 118 Colum. L. Rev. 9 (2018) ......................................................................60

Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Fed. Prac. & Proc.* Civil § 1281 (3d ed. 2012) ..........................................................43

Jane Manners & Lev Menand, *The Three Permissions: Presidential Removal and the Statutory Limits of Agency Independence*, 121 Colum. L. Rev. 1 (2021) ................................................................63

# GLOSSARY OF ABBREVIATIONS

| | |
|---|---|
| Administrative Law Judge | ("ALJ") |
| Consumer Financial Protection Bureau | ("CFPB") |
| Commodities Futures Trading Commission | ("CFTC") |
| Community Financial Services Association of America, Ltd. | ("CFSA") |
| Consumer Product Safety Commission | ("CPSC") |
| Federal Deposit Insurance Corporation | ("FDIC") |
| Fair Housing Finance Authority | ("FHFA") |
| Federal Labor Relations Authority | ("FLRA") |
| Federal Trade Commission | ("FTC") |
| Financial Industry Regulatory Authority | ("FINRA") |
| National Labor Relations Act | ("NLRA" or "Act") |
| National Labor Relations Board | ("NLRB" or "Board") |
| Public Company Accounting Oversight Board | ("PCAOB") |
| Securities and Exchange Commission | ("SEC") |
| Unfair Labor Practice | ("ULP") |

# COUNTERSTATEMENT OF JURISDICTION

The district court had subject-matter jurisdiction under 28 U.S.C. § 1331 to resolve the request for declaratory relief pursuant to a challenge to the statutory removal protections for members of the National Labor Relations Board.[1] However, under the Norris-LaGuardia Act, federal courts lack jurisdiction to issue an injunction "in any case involving or growing out of a labor dispute" including disputes regarding "representation" of employees, 29 U.S.C. §§ 101-115.

The district court dismissed the Amended Complaint for lack of standing (as well as failure to state a claim). But as Appellants currently have proceedings in front of the Board, an Article III case or controversy once again exists.

Plaintiffs-Appellants ("Appellants") filed a notice of appeal on June 7, 2024. The NLRB filed a notice of cross-appeal on June 21, 2024. This Court has appellate jurisdiction over both appeals under 28 U.S.C. § 1292(a)(1).

---

[1] References to "the NLRB" indicate the agency as a whole and "the Board" indicates the five-seat adjudicative body.

# COUNTERSTATEMENT OF ISSUES PRESENTED FOR REVIEW

1) Notwithstanding the district court's finding that Appellants lack standing under Article III of the U.S. Constitution, was Article III justiciability restored when, after the district court's decision, Appellants filed requests for reinstatement with the Board's Region 3, and after Region 3 denied those requests, filed requests for review with the Board?

2) Does the Norris-LaGuardia Act necessitate dismissal of the Amended Complaint to the extent it seeks injunctive relief because it divests federal courts of jurisdiction to enter injunctions "in any case involving or growing out of a labor dispute" including disputes regarding "representation" of employees, 29 U.S.C. §§ 101-115?

3) Does Appellants' failure to meet the causal-harm requirement for removability challenges set forth in *Collins v. Yellen*, 594 U.S. 220 (2021), require their case be dismissed with prejudice?

4)    If this Court determines that the causal-harm requirement has been satisfied, have Appellants presented a plausible legal theory that the statutory removal protections Congress granted to NLRB Board Members violate the separation of powers?

# COUNTERSTATEMENT OF THE CASE

## I.    Structure and Functions of the NLRB

The National Labor Relations Board ("NLRB") is the exclusive federal agency designated to protect employee rights under the National Labor Relations Act ("NLRA" or "Act"), 29 U.S.C. § 151, *et seq.*, to form and join unions, bargain collectively, and engage in concerted activity for mutual aid and protection, or to refrain from such activities. 29 U.S.C. § 157. The NLRA divides the powers of the General Counsel, which are prosecutorial, from those of the five-seat Board, which are adjudicative.[2] The Board is the sole statutory authority to adjudicate allegations that an employer or union has committed an unfair labor practice ("ULP"). *Id.* § 160. Such allegations arise from charges filed by members of the public; formal proceedings do not commence unless and until the NLRB's General Counsel, or her delegate, finds merit to the charge and issues complaint, *id.* §§ 153(d), 160(b), usually accompanied by a notice of hearing before an administrative law judge (ALJ). This

---

[2] The General Counsel also exercises "general supervision over all attorneys employed by the [NLRB] (other than [ALJs] and legal assistants to Board Members) and over the officers and employees in the regional offices." 29 U.S.C. § 153(d).

administrative process is the exclusive mechanism provided by

Congress to enforce most of the NLRA's proscriptions against ULPs;

employees, unions, and employers may not bring their own private

actions to enjoin ULPs.

The five-seat Board issues final agency decisions in ULP cases

under NLRA Section 10(c),[3] conducts and certifies the outcome of union-

representation elections under Section 9,[4] and promulgates rules and

regulations under Section 6. *Id.* §§ 160(c), 159, 156. Its members are

appointed by the President with the advice and consent of the Senate.

*Id.* § 153(a). Although not specifically required by statute, historically,

Presidents have made Board appointments consistent with the general

principle that members of the President's party will occupy a bare

---

[3] Final orders of the Board are not self-enforcing. Section 10(e) provides
that the Board must seek enforcement from an appropriate court of
appeals for such orders to become enforceable as judicial injunctions. *Id.*
§ 160(e). Further, any "aggrieved person" may seek to set aside a final
Board order in a court of appeals under Section 10(f). *Id.* § 160(f).

[4] Pursuant to Section 3(b) of the Act, the Board has delegated
processing of representation cases to the Regional Directors of the
NLRB's 26 regional offices. *See* Delegation of Authority, 26 Fed. Reg.
3911 (May 4, 1961). However, upon a party's request, the Board may
exercise discretionary review over any challenged action of a Regional
Director in a representation case. *See* 29 C.F.R. § 102.67(c)-(d).

majority of its total seats. *See* 2 *The Developing Labor Law: The Board, the Courts, and the National Labor Relations Act*, ch. 31.I.B (John E. Higgins, Jr. et al. eds., 7th ed. 2017).[5] Board Members serve staggered terms of up to five years and may only be removed "for neglect of duty or malfeasance in office." 29 U.S.C. § 153(a).

Like Board Members, the General Counsel is also appointed by the President with the advice and consent of the Senate. 29 U.S.C. § 153(d). But unlike Board Members, each General Counsel is appointed to serve a four-year term that starts with each new (or reconfirmed) officeholder. *Id.* In addition, the NLRA does not restrict the President's ability to remove the General Counsel. Accordingly, the General Counsel serves at the pleasure of the President. *See NLRB v. Aakash, Inc.*, 58 F.4th 1099 (9th Cir. 2023); *Exela Enter. Sols., Inc. v. NLRB*, 32 F.4th 436 (5th Cir. 2022) (finding that General Counsel could be removed by President at will).

---

[5] *See generally* Members of the NLRB Since 1935, https://www.nlrb.gov/about-nlrb/who-we-are/the-board/members-of-the-nlrb-since-1935. The last time a President appointed a fourth member of his own party was 1955.

## II.    Administrative Proceedings

Appellants are baristas employed by the Starbucks Corporation, which sells beverages and food at stores throughout the United States. Cortes works at a store in Buffalo, New York ("DelChip store") and Karam works at a store in Depew, New York ("Depew store"). (Am. Compl. ¶¶ 10 & 11; Ex. A at 1; Ex. G at 1, ECF 10).[6]

Beginning approximately in August 2021, Workers United ("the Union") began an organizing drive in and around Buffalo that eventually reached the Appellants' respective stores. After processing representation petitions filed under Section 9 of the Act, the NLRB's Region 3 office in Buffalo conducted secret-ballot elections at both stores. The Union won both elections and was certified by the NLRB as the exclusive collective-bargaining representative for the employees at the Depew store on March 17, 2022, and the DelChip store on April 15, 2022. (Am. Compl. ¶¶ 14, 31; Ex. E at 3; Ex. G at 3).

On April 28, 2023, Cortes filed a decertification petition with Region 3, seeking to oust the Union and end its representation of

---

[6] When citing exhibits filed in this case, this brief uses the page numbers that CM/ECF adds to the header of each document.

employees at the DelChip store. (*See* Am. Compl. ¶¶ 18. At that time, Starbucks stood accused of a host of unfair-labor-practice violations related to its dealings with the Union, including delaying and refusing to bargain in good faith over an initial contract, and was subject to an administrative complaint in Board Case 01-CA-305952 *et al.* (Am. Compl. ¶ 23 & Ex. D). On May 25, 2023, the Regional Director dismissed Cortes' petition without holding an election, based on Board precedent generally requiring representation petitions to be dismissed, subject to possible reinstatement, under such circumstances. (Am. Compl. ¶ 25 & Ex. E at 9-12); *see Rieth-Riley Constr. Co.*, 371 NLRB No. 109, slip op. at 3 (2022) ("the Board will generally dismiss a representation petition, subject to reinstatement, where there is a concurrent ULP complaint alleging conduct that, if proven, would interfere with employee free choice in an election, and is inherently inconsistent with the petition itself") (cleaned up).

On June 9, 2023, Cortes filed a request for review of that dismissal order with the Board. (Am. Compl. ¶ 26). Before the Board could rule on that request, Cortes filed the initial Complaint in the district court on October 4, 2023. (Compl., ECF No. 1). Then, on

November 15, 2023, the Board issued an order in which it denied Cortes' request for review, confirmed that the Regional Director's ruling was correct, and added Cortes as "a party-in-interest to Cases 01-CA-305952 et al. solely for the purpose of receiving notification of the final outcome of those [unfair-labor-practice] cases." (Am. Compl. ¶ 27 & Ex. F. at 2).

On October 18, 2023, Karam filed a similar petition with the NLRB seeking to decertify the Union as the representative of employees belonging to the Depew unit. (Am. Compl. ¶ 33). On November 28, 2023, the Regional Director for Region 3 dismissed Karam's petition, subject to possible reinstatement, for largely the same reasons she had dismissed Cortes's petition. (Am. Compl. ¶ 35 & Ex. G at 9-11).

The Amended Complaint in this case followed on December 12, 2023, with Karam appearing as Cortes's new co-Plaintiff. (ECF 10). Karam filed a request for review with the Board regarding the Regional Director's dismissal order on December 19, 2023. *See* Pet'r's Request for Review of RDs Decision and Order in *Starbucks*, Case 03-RD-328126, (filed 12/19/2023). In addition, both Cortes and Karam said that they "will" seek reinstatement of their respective decertification petitions at

later dates. (Am. Compl. ¶¶ 29, 36). Neither actually did so until after the district court proceedings had concluded.

## III. District Court Proceedings

As noted above, Cortes filed her Complaint on October 4, 2023, while her initial request for review was pending before the Board. Karam joined the suit as co-plaintiff on December 12, 2023, after Cortes' request for review had been denied. On December 19, 2023, Karam filed his request for review. Appellants' Amended Complaint seeks both declaratory and injunctive relief. (Am. Compl. ¶ 7, 96, Demand for Judgment ¶ A).

Appellants argued that Section 3(a) of the NLRA—the pertinent text of which was originally enacted in 1935—violates the Constitution's separation of powers "because it limits the President's ability to remove Board Members to instances of 'neglect of duty or malfeasance in office, but for no other cause.'" (Am. Compl. ¶ 104 (quoting 29 U.S.C. § 153(a)). Based on this premise, Appellants argued that the Board's "unconstitutional structure" violated "their right to have their petitions adjudicated by politically accountable officials." (Am. Compl. ¶ 105). Appellants argued that the Supreme Court's

decision upholding similar protections in *Humphrey's Executor v. United States*, 295 U.S. 602 (1935) did not apply to the Board Members, but "[t]o the extent that it does, it should be overruled." (Am. Compl. ¶ 103).

The NLRB moved to dismiss the Amended Complaint because Appellants failed to state a claim upon which relief could be granted. (Def. Mot., ECF 12). The NLRB argued that Appellants' failure to allege that the removal protections caused them actual harm was fatal to their claim under *Collins v. Yellen* and that Appellants' claim failed to state a claim on the merits because removal protections for multimember commissions are constitutional under longstanding Supreme Court precedent, including but not limited to *Humphrey's Executor*. (Def. Mot. at 9, 20).

On April 10, 2024, the district court granted the NLRB's motion to dismiss. *Cortes v. NLRB*, No. CV 23-2954 (JEB), 2024 WL 1555877 (D.D.C. Apr. 10, 2024) (ECF 19). First, the district court concluded, *sua sponte*, that Appellants lacked Article III standing because, given that the Board had by then denied both Appellants' requests for review, neither party "was presently involved in proceedings before the NLRB"

as of April 10, 2024. *Id.* at *4. The district court rejected as insufficient Appellants' assertions that they intended to request reinstatement of their petitions with the Board at some point, finding that "[s]uch 'some day intentions' do not a case or controversy make." *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992).

Second, as an independent basis for dismissal, the district court determined that Appellants had failed to state a claim as they "have not even tried to meet the harm requirement set forth in the Supreme Court's recent decision in *Collins* …" *Id.* at *5. The district court made clear that the causal-harm requirement set forth in *Collins* was not "Article III standing going by a different name," but rather "one element that plaintiffs must show to make out their constitutional claim against the Board Members' removal protections." *Id.* The district court found that Appellants did "not even pretend" that there was any causal nexus between the Board Members' removal protection and any action "taken (or to be taken) by the Board." *Id.* at 6. In addition, the district court rejected the Appellants' argument that *Collins* only applies to litigants seeking retrospective relief, holding that the causal-harm requirement applies to all cases, "irrespective of the relief sought." *Id.*

As a result of the failure to adequately establish a viable constitutional claim at the outset, the district court declined to opine on the merits.

## IV. Recent Developments

Several months later, on September 26, 2024, Cortes and Karam filed respective requests for reinstatement with the Regional Director for NLRB Region 3, who subsequently issued orders denying them on November 20, 2024. *See* Order Denying Reinstatement of Petition, Case 03-RD-316974, (filed 11/20/2024) (Cortes); Order Denying Reinstatement of Petition, Case 03-RD-328126, (filed 11/20/2024) (Karam). On December 18, 2024, Cortes and Karam filed separate requests for review with the Board, which are currently under consideration. *See* Cortes' Second Request for Review, Case 03-RD-316974 (filed 12/18/2024); Karam's Second Request for Review, Case 03-RD-328126 (filed 12/18/2024).[7]

## SUMMARY OF THE ARGUMENT

Appellants challenge the constitutionality of statutory removal protections for the individual members of the NLRB, a traditional,

---

[7] These documents will be included in the deferred appendix.

independent agency headed by a multimember board. Their Amended Complaint sought injunctive relief to prevent the Board from acting in their administrative cases until their lawsuit over the constitutionality of those removal protections concludes. (Am. Compl. ¶ 7, 96, Demand for Judgment ¶ A). It further sought a declaration that the challenged removal restrictions are unconstitutional. (*Id.*, Demand for Judgment ¶ B). The district court dismissed the Amended Complaint for lack of standing and for failure to state a claim.

The Court should affirm this dismissal, but not based upon standing, as the barriers to Article III justiciability ended when Appellants subsequently reinitiated their NLRB administrative proceedings. Nevertheless, the Norris-LaGuardia Act, 29 U.S.C. §§ 101-115, bars federal courts from issuing injunctions in cases that grow out of a labor dispute, as Appellants' case does, so this Court should affirm the dismissal of the Amended Complaint without prejudice to the extent that it seeks injunctive relief.

Moreover, the district court properly dismissed Appellants' non-injunctive claim for relief. Appellants failed to satisfy a required element of their removal-restrictions claim by failing to demonstrate

that the challenged removal provisions caused them harm or prejudicially impacted their NLRB proceedings, as required by *Collins v. Yellen*, 594 U.S. 220 (2021). And because Appellants cannot plausibly plead facts that would satisfy the causal-harm element, this Court should remand with instructions to dismiss Appellants' request for non-injunctive relief with prejudice. Finally, even if Appellants could bypass the necessity of showing causal harm, their removability claim is untenable, as it is foreclosed by *Humphrey's Executor v. United States*, 295 U.S. 602 (1935).

## STANDARD OF REVIEW

On review of a district court's dismissal of a complaint for lack of standing, the Court of Appeals "must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party." *Matthew A. Goldstein, PLLC v. United States Dep't of State,* 851 F.3d 1, 4 (D.C. Cir. 2017) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)). The appellate court's review is *de novo*. *Goldstein*, 851 F.3d at 4.

Similarly, in reviewing a dismissal of a complaint for failure to state a claim under Rule 12(b)(6), the Court of Appeals assumes that all

the allegations in the complaint are true, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and reviews *de novo* the dismissal of the complaint. *Kowal v. MCI Commc'ns Corp.,* 16 F.3d 1271, 1276 (D.C. Cir. 1994); Fed. R. Civ. P. 12(b)(6).

## ARGUMENT

I. **Regardless of whether Appellants lacked standing at the time of the district court's dismissal, any justiciability barrier no longer exists, given that Appellants again have administrative proceedings pending in front of the Board.**

As described above, the district court dismissed the Amended Complaint for lack of standing. *Cortes,* 2024 WL 1555877, at \*2. The district court correctly explained that as of the time of its decision, neither Appellant had a case or claim pending before the NLRB, as the Board had denied both of their requests for review.[8] The district court noted the "fact that they <u>will</u> seek – but have not yet sought – reinstatement of their decertification petitions." *Cortes*, 2024 WL 1555877, at \*4. But that was insufficient according to the district court because "[Appellants] are not presently involved in proceedings before

---

[8] Cortes' request for review was denied on Nov. 15, 2023. (Am. Compl. ¶ 27); Karam's request for review was denied on March 12, 2024. (Appellants' Br. 12). The district court dismissed the case on April 10, 2024. *Cortes,* 2024 WL 1555877, at \*2.

the NLRB. . . . They simply anticipate that they will be parties to such proceedings whenever they get around to filing their reinstatement petitions." *Id.* Thus, Appellants had only "tenuous" intentions to file requests for reinstatement. *Id.* at *3, *4. On that basis, the district court properly found that "[s]uch "'some day' intentions" do not a case or controversy make." *Id.* (citing *Lujan,* 504 U.S. at 564).

On appeal, Appellants argue that the district court's analysis was wrong for several reasons. Appellants argue that the district court incorrectly determined they lacked standing and that standing was not even the correct justiciability doctrine to apply. (Appellants' Br. 16). Appellants posit that the only arguable Article III deficiency would have been mootness, but their case falls within the "capable of repetition, yet evading review" exception, (*id.* at 26), as "NLRB representation proceedings are too short to fully litigate the underlying question here." (*Id.* at p. 16). On this latter point, Appellants are wrong.

*Leedom v. Kyne*, 358 U.S. 184 (1958), allows a district court to retrospectively "strike down an order of the Board made in excess of its delegated authority" in extraordinary circumstances. *Id.* at 188. While *Kyne* itself involved a violation of statutory rights, this Court has

interpreted *Kyne* jurisdiction to extend to "strong and clear" constitutional claims arising from Board proceedings. *McCulloch v. Libbey-Owens-Ford Glass Co.*, 403 F.2d 916, 917 (D.C. Cir. 1968). Therefore, Appellants' assertion that their removability claims are incapable of receiving full judicial review in the normal course is wrong. If the Board acts while such a lawsuit challenging its members' removal restrictions is pending, the challenger can either amend or file a new lawsuit premised on the *Kyne* doctrine.

Nevertheless, subsequent events have eliminated the justiciability concerns upon which the district court focused. Appellants are correct that "Cortes and Karam currently have business before the Board," based on their recent requests that the Board review whether to reinstate their dismissed petitions. (Appellants' Br. 26); *see* Cortes' Second Request for Review; Karam's Second Request for Review (see footnote 7, *supra*). For this reason, the NLRB does not currently contest the justiciability of Appellants' claims now that they are again seeking reinstatement of their decertification requests, and the Board is yet to act.

Appellate courts have the authority to allow amendment of defective allegations of jurisdiction. *See* 28 U.S.C. § 1653.[9] It would be unnecessary, and a waste of judicial resources, to require the district court to reconsider the case on amended or supplemented pleadings because the court has already ruled that Appellants' allegations fail to state a claim. Accordingly, this Court should find that justiciability concerns have been satisfied and proceed to the alternative basis for dismissal reached by the district court.

II. **This Court may partially affirm the district court's dismissal of the complaint because Congress has jurisdictionally barred injunctive relief in cases involving or growing out of labor disputes.**

There is a separate basis to at least partially affirm the district court's dismissal without prejudice of Appellants' lawsuit, because it seeks injunctive relief barred by the Norris-LaGuardia Act (NLGA), 29 U.S.C. § 101 *et seq*. Absent a statutory exception, Congress has jurisdictionally barred all "court[s] of the United States" from issuing injunctions "in any case involving or growing out of any labor dispute."

---

[9] Technically, the Amended Complaint should be supplemented, *see* Fed. R. Civ. P. 15(d), not amended, to add new facts which have occurred since the complaint was filed. But as a practical matter, the result would be the same, adding allegations in support of justiciability.

29 U.S.C. § 107; *see generally Boys Markets, Inc. v. Retail Clerks Union*, 398 U.S. 235, 253 (1970). If a case grows out of a labor dispute, a court must determine if the case either meets all of the "rigid requirements" to issue an injunction or falls into one of two narrow exceptions. *VHS Acquisition Subsidiary No. 7 v. NLRB*, No. 1:24-cv-02577, 2024 WL 4817175, at *4–5 (D.D.C. Nov. 17, 2024). Those exceptions are to accommodate the Act "to specific federal legislation" and "to . . . the strong federal policy favoring arbitration." *Jacksonville Bulk Terminals, Inc. v. Int'l Longshoremen's Ass'n*, 457 U.S. 702, 708, (1982); 29 U.S.C. §§ 107–09.[10]

"It is a fundamental precept that federal courts are courts of limited jurisdiction. The limits upon federal jurisdiction, whether imposed by the Constitution or by Congress, must be neither disregarded nor evaded." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978); *see also CFTC v. Nahas*, 738 F.2d 487, 492 (D.C.

---

[10] This case does not fall within either exception. Appellants cannot point to a federal statute that would require reconciliation with the NLGA because the injunction it seeks is "a judge-made remedy" which is "subject to express and implied statutory limitations." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015). The constitutional character of the instant litigation does not affect that analysis.

Cir. 1984) ("A federal court's subject-matter jurisdiction" is "constitutionally limited by Article III," and "extends only so far as Congress provides by statute"). A claim that a "federal court lacks subject-matter jurisdiction may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006) (citations omitted).

The Amended Complaint's demand for judgment plainly states that, in addition to the requested declaratory judgment, Appellants seek "an injunction preventing Board Members from acting on Plaintiffs' Request for Review or request for reinstatement until the resolution of this matter, and/or Board Members are properly removable by the President." (Am. Compl. p. 25, ¶ A).

This case unquestionably "grow[s] out of" a labor dispute, which includes "any controversy . . . concerning the association or *representation* of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment." 29 U.S.C. § 113 (emphasis added). The scope of "labor dispute" is clear, broad, and admits no non-statutory exception. *See Jacksonville,* 457 U.S. at 711–13

(the "critical element... is whether the employer-employee relationship is the matrix of the controversy") (cleaned up); *In re Dist. No. 1-Pac. Coast Dist., Marine Eng'rs' Beneficial Ass'n,* 723 F.2d 70, 77 (D.C. Cir. 1983) ("A district court has no *jurisdiction* under the Norris-LaGuardia Act to issue a labor injunction without adhering to the explicit terms of the Act.")

The instant proceeding stems directly from Appellants' desire to hold decertification elections to remove the Union as bargaining representative. That factual context meets the definition of "labor dispute," as it represents a "controversy" relating to "terms or conditions of employment" of Starbucks' employees. 29 U.S.C. § 113(c).[11]

---

[11] Congress understood that NLRA disputes would be subject to the NLGA's requirements; it included in the NLRA a limited exception to the NLGA allowing injunctions *only* in relation to enforcement or review of final Board orders or upon the Board's application for temporary relief. 29 U.S.C. § 160(h). An injunction against *non-final* Board action would enlarge this limited exception contrary to its plain meaning. *See Buffalo Forge Co. v. United Steelworkers*, 428 U.S. 397, 407 (1976) (exceptions to NLGA's anti-injunction policy to accommodate other laws are to be construed narrowly). Moreover, NLGA's explicit jurisdictional bar is not affected by *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023), which is limited to implicit bars. *See, e.g., Moats v. Nat'l Credit Union Admin. Bd.*, No. 3:23-cv-147, 2024 WL 1724271, at *2–4 (S.D. Tex. Apr. 9, 2024), *appeal docketed*, No. 24-40259 (5th Cir. Apr. 22, 2024).

Accordingly, the relief that Appellants in this case—an order blocking the Board from processing representation petitions—results from a labor dispute of precisely the type that Congress intended to be free from the overweening influence of federal injunctions. *Accord VHS*, 2024 WL 4817175, at *5 (constitutional challenge to NLRB grew out of a labor dispute because challenge would not exist but for the ULP charges and proceeding).

Finally, Norris-LaGuardia's strictures preclude relief where a complainant "has failed to comply with any obligation imposed by law which is involved in the labor dispute in question, or who has failed to make every reasonable effort to settle such dispute either by negotiation or with the aid of any available governmental machinery of mediation or voluntary arbitration." 29 U.S.C. § 108; *In re Dist. No. 1-Pac. Coast Dist., Marine Eng'rs' Beneficial Ass'n,* 723 F.2d at 80 ("[D]istrict court has no jurisdiction to issue a[n] injunction . . . where the complainant has failed to [engage in] arbitration."). Appellants' failure to exhaust the NLRB's administrative processes here is fatal to their claims.[12]

---

[12] It does not matter that Appellants' claims are against the NLRB, not Starbucks or the Union. *E.g., Armco, Inc. v. United Steelworkers*, 280

Because the Norris-LaGuardia Act forecloses any injunctive relief here, this Court can affirm the district court's dismissal of the Amended Complaint, at least as to its request for injunctive relief.[13]

## III. The district court correctly dismissed Appellants' case based on their failure to demonstrate causal harm.

As an alternative grounds for dismissal aside from standing, the district court dismissed Appellants' case based on their failure "to meet the harm requirement set forth in the Supreme Court's recent decision in *Collins.*" *Cortes*, 2024 WL 1555877, at *5. In *Collins v. Yellen*, 594 U.S. 220 (2021), the Supreme Court made clear that an unlawful removal restriction does not deprive properly appointed officers of "the authority to carry out the functions of the[ir] office[s]." 594 U.S. 220, 258 (2021). Consequently, to state a claim that removal protections are

---

F.3d 669, 678–81 (6th Cir. 2002) (injunction against government officials impermissible because it would interfere with union's rights in labor dispute); *see also New Negro All. v. Sanitary Grocery Co.*, 303 U.S. 552, 560 (1938); *Nexstar Media, Inc. Grp. v. NLRB*, --- F. Supp. 3d ---, No. 4:24-cv-01415-BYP, 2024 WL 4127090, at *5 (N.D. Ohio Aug. 26, 2024) (noting that suit was "intended to divert the NLRB's ability to administratively resolve the dispute initiated by [a union]").

[13] An appellate court may affirm a district court on grounds other than those found by the district court. *RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*, 682 F.3d 1043, 1045, n.2 (D.C. Cir. 2012).

unconstitutional, a challenger must allege that such protections "cause[d it] harm." *Id.* at 259–60. The lower court's dismissal of Appellants' case accords with a unified line of decisions from circuit and district courts declining to grant relief for removal restrictions claims absent a showing of causal harm. On appeal, Appellants make the same arguments that the district court correctly rejected.

**A.** ***To maintain a constitutional challenge to statutory removal protections, the challenger must show that the protections caused actual harm.***

Although the D.C. Circuit has not yet addressed the issue, the lower court's decision on causal harm reflects a critical consensus reached by circuit courts. That is, a claim challenging statutory removal protections cannot succeed unless the challenger shows that the allegedly unlawful removal restrictions actually "cause[d] harm" to him. *Collins*, 594 U.S. at 260.

In *Collins*, the Supreme Court found that statutory for-cause removal protection for the Director of the Federal Housing Finance Agency (FHFA) violated separation-of-powers principles. 594 U.S. at 220. In discussing what, if any, relief could be awarded, the Court made clear that removal-restriction problems are materially distinct from

officer-appointment problems. Specifically, unlike a defect in appointment, an unlawful removal restriction does not deprive properly appointed officers of "the authority to carry out the functions of the[ir] office[s]." *Id.* at 258. So long as the agency official was "properly *appointed*," an unconstitutional restriction on the President's removal power does not void the agency's actions unless the removal protection caused the plaintiff compensable harm. *Id.* at 257-58.[14]

The Court posited two hypotheticals that could potentially demonstrate that the removal provisions "inflict[ed] compensable harm" and provide a basis for a court to grant relief: (1) if the President "had attempted to remove [an agency official] but was prevented from doing so by a lower court decision holding that he did not have 'cause' for removal;" or (2) if the President "had made a public statement expressing displeasure with actions taken by [an agency official] and asserted that he would remove [the official] if the statute did not stand in the way." *Id.* at 259-60.

---

[14] By contrast, when an executive officer whose appointment does not comply with the Appointments Clause hears and decides a matter, the remedy is "a new 'hearing before a properly appointed' official." *Lucia v. SEC*, 585 U.S. 237 (2018) (quoting *Ryder v. United States*, 515 U.S. 177, 183, 188 (1995)).

After *Collins,* numerous circuits interpreted and applied its holding, coalescing around a consistent view. For example, in *Community Financial Services Association of America, Ltd. v. CFPB*, 51 F.4th 616 (5th Cir. 2022) ("*CFSA*"),[15] the Fifth Circuit declined to invalidate provisions of a rule issued by the Consumer Financial Protection Bureau ("CFPB"), based on claims that the rule "was initially promulgated by a director who was unconstitutionally shielded from removal." *Id.* at 631. Interpreting *Collins*, the court of appeals held that when a plaintiff claims that an allegedly unconstitutional removal protection entitles the plaintiff to relief—whether retrospective or prospective—"the challenging party must demonstrate not only that the removal restriction violates the Constitution but also that 'the unconstitutional removal provision inflicted harm.'" *Id.* at 631-32 (quoting *Collins*, 594 U.S. at 260). The Fifth Circuit went on to hold that a challenger must show three things to prove harm:

> (1) a substantiated desire by the President to remove the unconstitutionally insulated actor, (2) a perceived inability to

---

[15] An unrelated holding from *CFSA* was subsequently reviewed and reversed by the Supreme Court. *See* 601 U.S. 416 (2024). The Fifth Circuit then formally reinstated the portion of its opinion addressing *Collins*. *See* 104 F.4th 930 (5th Cir. 2024) (per curiam), *reh'g denied*, No. 21-50826 (5th Cir. Nov. 12, 2024).

remove the actor due to the infirm provision, and (3) a nexus between the desire to remove and the challenged actions taken by the insulated actor.

*Id*. at 632. That circuit court found that the CFSA plaintiffs' efforts to invalidate the rule failed, as they could not show that "President Trump would have removed [CFPB Director] Cordray and that the Bureau would have acted differently as to the rule." *Id*. at 633.

Unsurprisingly, the Fifth Circuit reached a nearly identical conclusion one year later in *Collins v. Department of Treasury*, 83 F.4th 970 (5th Cir. 2023). After additional proceedings following the Supreme Court's judgment and remand in *Collins v. Yellen*, the Fifth Circuit affirmed the dismissal of the amended complaint on the pleadings. The court found that the challengers had failed to show all three of the *CFSA* prerequisites for establishing harm from the FHFA Director's removal protections. The challengers alleged that "President Trump had a substantiated desire … to remove [FHFA] Director Watt and a perceived inability to do so because of [the statute's] removal restriction." *Id*. at 983 (cleaned up). While this satisfied two of the three prerequisites, it fell short of plausibly alleging "a nexus between the desire to remove" and "the challenged actions taken by the improperly

insulated official." *Id.* at 983-84. Therefore, the amended complaint "in its entirety … failed to present sufficient factual allegations to survive a motion to dismiss." *Id.* at 983 n.12. Thus, *Collins v. Department of Treasury* eliminated any doubt that the Fifth Circuit meant what it said in *CFSA*: "After *Collins [v. Yellen]*, a party challenging agency action must show not only that the removal restriction transgresses the Constitution's separation of powers but also that the unconstitutional provision caused (or would cause) them harm." *Id.* at 983 (quoting *CFSA*, 51 F.4th at 632).[16]

Similarly, in *Bhatti v. FHFA*, 97 F.4th 556 (8th Cir. 2024), the Eighth Circuit affirmed a lower court's dismissal of claims challenging the FHFA Director's removal protections due to the challenger's failure to "adequately plead any harm" from those protections, as *Collins* requires. *Id.* at 558.

As noted, these two circuits are hardly alone; all other circuits to consider *Collins'* compensable-harm requirement have held that

---

[16] Notably, the same day that the Supreme Court granted certiorari in *CFSA* on an issue concerning appropriations, No. 22-448 (Feb. 27, 2023), the Court denied a conditional cross-petition for certiorari on whether the CFPB Director's unconstitutional removal protections rendered an agency rulemaking void, No. 22-663 (Feb. 27, 2023).

removal challengers must make a particularized showing of causal-harm to maintain a challenge. *See, e.g.*, *Leachco, Inc. v. CPSC*, 103 F.4th 748, 756-57 (10th Cir. 2024) (affirming denial of a preliminary injunction and holding that removal-restriction challengers "must show that the removal provision caused some harm to them beyond the mere existence of the unconstitutional provision"); *CFPB v. Nat'l Collegiate Master Student Loan Tr.*, 96 F.4th 599, 614-15 (3d Cir. 2024) (holding that "a mere allegation that the unconstitutional [removal] provision inherently caused them harm is insufficient"), *cert. denied*, No. 24-185, 2024 WL 5112295 (Dec. 16, 2024); *accord K & R Contractors, LLC v. Keene,* 86 F.4th 135, 149 (4th Cir. 2023); *CFPB v. L. Offs. of Crystal Moroney, P.C.*, 63 F.4th 174, 180 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 2579 (2024); *Calcutt v. FDIC,* 37 F.4th 293, 318-320 (6th Cir. 2022), *rev'd per curiam on other grounds*, 598 U.S. 623 (2023)[17]; *CFPB v. CashCall, Inc.*, 35 F.4th 734, 742-43 (9th Cir. 2022).

---

[17] Just three months ago, a unanimous Sixth Circuit motions panel relied on *Collins'* causal-harm requirement to deny an injunctive-relief request that was premised on a similar challenge to the removal protections enjoyed by another Agency official, NLRB ALJs. *YAPP USA Auto. Sys., Inc. v. NLRB*, No. 24-1754, 2024 WL 4489598, at *1 (6th Cir. Oct. 13, 2024) (denying request for an injunction pending appeal),

Moreover, several district courts have followed the predominant view requiring plaintiffs to allege a causal nexus to obtain any relief. *See, e.g., Kerwin v. Trinity Health Grand Haven Hosp.*, No. 1:24-CV-445, 2024 WL 4594709, at *5 (W.D. Mich. Oct. 25, 2024) (denying removal-restrictions challenger's motion for judgment on the pleadings); *Ares Collective Grp. LLC v. NLRB*, No. CV-24-00517-TUC-SHR, 2024 WL 4581436, at *2 (D. Ariz. Oct. 25, 2024) (denying motion for preliminary injunction); *Spring Creek Healthcare Ctr. v. NLRB*, No. 2:24-CV-09016, 2024 WL 4690938, at *3 (D.N.J. Nov. 6, 2024) (denying motion for injunction pending appeal), *injunction pending appeal denied*, No. 24-3043 (3d Cir. Nov. 6, 2024).

Given this formidable line of precedent, the district court below was correct to apply the widely held interpretation of *Collins*, by finding that a removal challenger does not state a claim for relief simply by alleging he was "forced to appear before executive officials who are not accountable to the President." *Cortes*, 2024 WL 1555877, at *5. Instead, the challenger must allege that that removal protections would play

---

*emergency application for writ of injunction denied*, No. 24A348, 2024 WL 4508993, at *1 (U.S. Oct. 15, 2024) (Kavanaugh, J., in chambers).

some role in future Board decisions pertaining to the challenger. *Id.* at *5-7. Otherwise, the challenger has not stated a claim upon which relief can be granted. *See, e.g.*, *Bhatti*, 97 F.4th at 558, 562; *Collins v. Dep't of Treasury*, 83 F.4th at 984.

Equally settled is the rule that a causal nexus must be alleged regardless of whether the challenger is seeking prospective or retrospective relief. As the district court correctly explained, the causal-harm requirement "applies irrespective of the relief sought." *Cortes*, 2024 WL 1555877 at *5, *6. This applies as well to requests for declaratory relief because, as the lower court explained "if the reasoning of *Collins* drew no distinction between retrospective and prospective remedies . . . it surely drew no distinction between different kinds of prospective relief." *Id.* at *6. And there is good reason to apply this requirement to *all* forms of relief, because to do otherwise, "would, contrary to usual remedial principles, put the plaintiffs in a better position than if no constitutional violation had occurred." *Collins*, 594 U.S. at 274 (Kagan, J., concurring) (quotation omitted).

The Fifth Circuit, for one, could not have been clearer: the concrete injury required by *Collins*'s causal-harm holding "did not rest

on a distinction between prospective and retrospective relief." *CFSA*, 51 F.4th at 631. And other circuits agree. *See, e.g.*, *Leachco*, 103 F.4th at 757 ("*Collins'* relief analysis applies to both retrospective and prospective relief."); *Crystal Moroney*, 63 F.4th at 180-81 (declining to read *Collins* as limited to retrospective relief); *Calcutt*, 37 F.4th at 316 ("The *Collins* inquiry focuses on whether a 'harm' occurred that would create an entitlement to a remedy, rather than the nature of the remedy, and our determination as to whether an unconstitutional removal protection 'inflicted harm' remains the same whether the petitioner seeks retrospective or prospective relief . . . .") (quoting *Collins*, 594 U.S. at 260); *see also YAPP*, 2024 WL 4489598, at *3 (adhering to *Calcutt* and holding that the distinction between retrospective and prospective relief "does not matter").

The district court noted that *Collins* "only addressed retrospective relief there because the plaintiffs 'no longer ha[d] a live claim for prospective relief'" and concurred with "every court of appeals that has dealt with this claim" in concluding that "*Collins* 'applies with equal force regardless of the relief sought.'" *Cortes*, 2024 WL 1555877, at *6 (quoting *Collins*, 594 U.S. at 260; *Moroney*, 63 F.4th at 180-81). The

district court also correctly held that the *Collins* causal-harm requirement applies to all cases, "irrespective of the relief sought." *Id.* ("…if the reasoning of *Collins* drew no distinction between retrospective and prospective remedies, as these [circuit court] cases explicitly say, it surely drew no distinction between different kinds of prospective relief"). There is little doubt, then, that causal harm is a required element of *any* removal-protection claim and not a question of remedy. *See Bhatti*, 97 F.4th at 558, 562 (affirming lower court's dismissal of removal claim for failing to plead causal harm); *Collins v. Dep't of Treasury*, 83 F.4th at 984 (same).

## B. *None of Appellants' arguments changes the import of* Collins.

On appeal, Appellants reassert the arguments the district court correctly rejected in its well-reasoned and well-supported opinion. Appellants' central argument is that *Collins* does not apply to plaintiffs seeking prospective declaratory relief (Appellants' Br. 60) and that Supreme Court precedent entitles them to declaratory relief based solely on the purported harm of "being required to pursue their decertification petitions before officials unaccountable to the President." (*Id.* at 51). Appellants are wrong, and the district court was right: a

removal-protection challenger is not entitled to "any relief" unless it can show a causal nexus between the removal protections and some kind of actual, compensable harm to the plaintiff. *Cortes*, 2024 WL 1555877, at *5; *see also Leachco*, 103 F.4th at 757; *Crystal Moroney*, 63 F.4th at 180-81; *CFSA*, 51 F.4th at 631; *Calcutt*, 37 F.4th at 316.

Appellants urge this Court to ignore the consensus among its sister circuits, overrule the district court, and "find *Collins* inapplicable to requests for prospective declaratory relief." (Appellants' Br. 60). In Appellants' view, *Collins* applies only where the challenger seeks to void or unwind agency action already taken—in other words, only to retrospective relief. (*See* Appellants' Br. 57, 58). They aver that the district court "added its own gloss to *Collins* by claiming it" applies to all removal-protection challengers regardless of relief. (*Id.*). But the district court was hardly forging its own path; it was adopting the reasoning of nearly every court of appeals to consider the issue.

As noted above, *Collins* focused on retrospective relief because any prospect of forward-looking relief in that case had been mooted. 594 U.S. at 244, 259-60; *see also Crystal Moroney*, 63 F.4th at 180. But nothing in *Collins* suggests that prospective relief is exempt from the

nexus requirement. To the contrary and as cited above, circuit courts have repeatedly found that the distinction between prospective or forward-looking relief, as opposed to retrospective or backwards-looking relief like the kind at issue in *Collins* itself, makes no difference.[18] The district court correctly relied on that precedent in finding that "*Collins* applies irrespective of the relief sought." *Cortes*, at *6.

Appellants theorize that "forward-looking" declaratory relief is somehow a horse of a different color, (Appellants' Br. 54), challenging the district court's conclusion that, "if the reasoning of *Collins* drew no distinction between retrospective and prospective remedies…it surely drew no distinction between different kinds of prospective relief." *Cortes*, at *6. They point to *Free Enterprise Fund* for the proposition that plaintiffs challenging the constitutionality of removal protections

---

[18] Appellants rely on a footnote in the Fifth Circuit's majority opinion in *Cochran v. SEC*, 20 F.4th 194, 210 n.16 (5th Cir. 2021) (en banc), *aff'd sub nom. Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023), to claim that the *Collins* is limited to efforts to "void" agency action. (Appellants' Br. 58). Not so. *Cochran* concerned subject-matter jurisdiction, not the pertinent issue of whether removal challengers can obtain prospective relief without a showing of causal harm. *See* 20 F.4th at 197–98. And in any event, as explained above, the Fifth Circuit subsequently addressed the causal-harm issue directly in *CFSA*, in which it explicitly held that the causal-harm requirements apply to claims for both prospective and retrospective relief. *CFSA*, 51 F.4th at 631.

are entitled to declaratory relief to ensure that their administrative cases are considered by officials who are properly accountable to the President. But *Free Enterprise Fund* simply held that a separation-of-powers violation could be resolved by a district court. *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 513 (2010). As Justice Thomas explained in his concurrence in *Collins*, *Free Enterprise Fund* "indicated that individuals may have an implied private right of action under the Constitution to seek equitable relief to 'preven[t] entities from acting unconstitutionally' [including to vindicate] separations-of-powers claims." 594 U.S. at 263 n. 1 (Thomas, J. concurring).

But neither that holding nor any other part of *Free Enterprise Fund* speaks to what elements must be alleged to state a claim or to demonstrate entitlement to a declaratory judgment as a matter of law. Because *Free Enterprise Fund* predates *Collins*, it should hardly be surprising that the Supreme Court did not consider the question of compensable harm there. In other words, *Collins* does not conflict with *Free Enterprise Fund* at all; rather, it explicates a question about the elements of the legal claim that *Free Enterprise Fund* did not address.

Additionally, Appellants' reliance on *Axon*—a case about subject-matter jurisdiction, *see Alpine Sec. Corp. v. FINRA*, 121 F.4th 1314, 1335-36 (D.C. Cir. 2024); *Leachco*, 103 F.4th at 758—is misplaced. *Axon* bears on whether statutory provisions channeling judicial review of administrative action to the courts of appeals implicitly divest district courts of jurisdiction over certain structural claims. 598 U.S. at 191. *Axon* says nothing about causal harm let alone whether a plaintiff can obtain declaratory relief without it. "Because *Axon* does not overrule *Collins*," or even address it, *Axon* is of no help to Appellants here. *YAPP*, 2024 WL 4489598, at *3.

Similarly, Appellants' discussion of *Consumers' Research v. CPSC*, 91 F.4th 342, 349-50 (5th Cir. 2024), *cert. denied*, No. 23-1323, 2024 WL 4529808 (Oct. 21, 2024), does not aid their claim. The passages cited by Appellants exclusively addressed Article III standing (Appellants' Br. 58), not the elements of a claim. And Appellants' assertions that *Consumers' Research* supports the proposition that *Collins* does not apply to "plaintiffs seeking only a declaration," (*id*.), are belied by the Fifth Circuit's earlier decisions in *CFSA* and *Collins v. Department of Treasury*, which unequivocally rejected the argument that the nexus

requirement in removal-restriction challenges hinges on the type of relief the plaintiff requests. *See also Calcutt*, 37 F.4th at 316 (explaining that *Collins* is not concerned with "the nature of the remedy").

*Consumers' Research* should not be read, as Appellants do, to equate an injury sufficient for Article III standing with an injury that is legally required to state a claim for relief. Standing is a threshold inquiry that concerns a court's power to adjudicate a case and thus whether a federal court has jurisdiction under Article III of the Constitution. However, an injury that is sufficient for standing purposes is not necessarily sufficient to state a legal claim, much less to prevail as a matter of law. A recent Ninth Circuit opinion concisely explains this critical distinction:

> To establish the constitutional minimum for Article III jurisdiction, a plaintiff must plead an injury-in-fact; this creates a pleading floor. A particular cause of action may require more—for instance, a particular type of injury or a threshold magnitude of injury—without raising the constitutional pleading floor. A failure to plead the more-specific or more-demanding statutory injury shows a failure to state a claim, not a failure to establish standing.

*Jones v. Ford Motor Co.*, 85 F.4th 570, 573–74 (9th Cir. 2023).

The district court thus correctly rejected Appellants' efforts to get around *Collins*, cogently explaining, "the *Collins* harm requirement is [not] just Article III standing going by a different name" *Cortes*, 2024 WL 1555877, at *5. Rather, the "better way to understand [it]… is as one element the plaintiffs must show to make out their constitutional claim." *Id.* (citing *Collins v. Dep't of Treasury,* 83 F.4th at 981).[19]

Thus, the mere existence of allegedly unlawful removal protections for Board members is not compensable harm sufficient to entitle Appellants to a declaration—or *any* relief, for that matter. Appellants are required to establish that the removal provisions at issue "inflicted harm"—or that such provisions will inflict harm in the future—for example, by "possibly altering the Board's behavior," *Calcutt*, 37 F.4th at 317, or preventing the President from effectuating a desired removal, *id.*; *see also Collins*, 594 U.S. at 259–60; *CFSA*, 51 F.4th at 632. There is no evidence of anything of the sort. Accordingly,

---

[19] In *VHS Acquisition Subsidiary No. 7 v. NLRB*, No. 1:24-CV-02577 (TNM), 2024 WL 5056358 (D.D.C. Dec. 10, 2024), the court reached a contrary conclusion on causal harm. But *VHS* failed to engage with Chief Judge Boasberg's well-reasoned analysis in *Cortes*. The NLRB disagrees with *VHS* and intends to appeal the decision in due course.

the district court's dismissal of the case on causal-harm grounds was proper.

Appellants further assert that *Collins* and cases following it are inapplicable because none of those cases concerned plaintiffs seeking only declaratory relief. (Appellants' Br. 57-58). To the extent Appellants imply that declaratory relief is neither retrospective nor prospective, that implication is unpersuasive under these circumstances. Here, Appellants' suit is against a government entity. In that situation, declaratory relief functions as a substitute for an injunction, which is a classic form of prospective relief. *See California v. Grace Brethren Church,* 457 U.S. 393, 408 (1982) (explaining that "there is little practical difference between injunctive and declaratory relief"); *Poe v. Gerstein*, 417 U.S. 281, 281 (1974) (injunctive relief not necessary where it is "anticipated that [the government] would respect the declaratory judgment"). Additionally, if Appellants do not intend for the declaratory relief they seek here to have prospective effect, then their request is tantamount to one for an advisory opinion, which a federal court cannot provide. *United Pub. Workers v. Mitchell,* 330 U.S. 75, 89 (1947).

Simply put, Appellants either seek declaratory relief that is prospective in nature and thus encompassed by *Collins*' causal-harm requirement, or they seek an advisory opinion that is unavailable under Article III. Either way, they cannot obtain the legal relief they seek.

## IV. This case should be remanded to the district court with instructions to dismiss the Amended Complaint with prejudice to the extent it seeks non-injunctive relief.

In the instant case, the district court dismissed the case without prejudice (Order, ECF 18), presumably relying upon its threshold determination that Appellants lacked standing. Should this Court agree with the parties that the instant case now presents a justiciable claim and that the district court's causal-harm analysis was correct, then this Court should remand this matter with instructions to dismiss the Amended Complaint's request for non-injunctive relief with prejudice.

Dismissal for failure to state a claim upon which relief can be granted "is a resolution on the merits and is ordinarily prejudicial." *Okusami v. Psych. Inst. of Wash., Inc.*, 959 F.2d 1062, 1066 (D.C. Cir. 1992). Dismissal with prejudice is appropriate if the district court "has determined that an amendment [to the complaint] would be futile." *Givens v. Bowser*, 111 F.4th 117, 123 (D.C. Cir. 2024) (citing *Couch v.*

*Verizon Commc'ns Inc.*, 105 F.4th 425, 431 (D.C. Cir. 2024)); *see also Belizan v. Hershon*, 434 F.3d 579, 583 (D.C. Cir. 2006).

By contrast, dismissal without prejudice is normally granted because "*absent* futility or special circumstances . . . a plaintiff should have the opportunity to replead so that claims will be decided on merits rather than technicalities." *Id.* (citing *Foman v. Davis*, 371 U.S. 178, 181–82 (1962)) (emphasis added); *see also* 5 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Fed. Prac. & Proc.* Civil § 1281 (3d ed. 2012) (district court will normally grant motion to dismiss "without prejudice and permit the filing of an amended pleading, except when there is reason to believe that the amendment will be to no avail").

Here, Appellants have consistently maintained—before the district court and this Court—that they are entitled to declaratory relief despite the fact that they have not provided any evidence of having suffered harm caused by the removal protections afforded to members of the NLRB's five-seat Board. Indeed, they made no attempt to amend their pleading at the district-court stage to satisfy causal harm, nor did they claim in their opening brief on appeal that they could or would attempt to meet this standard.

Here, "the allegation of other facts… could not possibly cure the deficiency" in Appellants' claims. *Belizan*, 434 F.3d at 583. There is no plausible reason to believe that Appellants can demonstrate: (1) a substantiated desire by the President to remove any of the officials who are alleged to be unconstitutionally insulated from removal, (2) a perceived inability by the President to remove the official due to the infirm provision, and (3) a nexus linking the President's desire to remove the official and that official's actions or activities which are under challenge. *See Bhatti*, 97 F.4th at 560; *CFSA,* 51 F.4th at 632. Appellants have not argued that they can do so. Thus, it would be futile to allow them to replead their claims, *Belizan*, 434 F.3d at 583*; see also Givens*, 111 F.4th at 123, and the district court should be instructed to dismiss the Amended Complaint with prejudice, to the extent it seeks non-injunctive relief.[20]

---

[20] Should this Court reverse the district court, the case should be remanded to the district court for further proceedings. Appellants seek to circumvent normal appellate procedure by asking this Court to not only reinstate their Amended Complaint but also affirmatively instruct the district court to award them declaratory relief (Appellants' Br. 49-54) even though they never filed a dispositive motion below.

Appellants' request for declaratory relief should be properly considered by the district court in the first instance, if necessary. The NLRB

## V. Appellants failed to present a plausible separation-of-powers claim that could survive a motion to dismiss.

Even if Appellants clear the causal-harm hurdle, the case should nevertheless be dismissed under Rule 12(b)(6) for failure to set forth a plausible legal theory for invalidating Board members' removal protections. *See Neitzke v. Williams*, 490 U.S. 319, 326 (1989) (dismissal is warranted if, assuming the truth of the factual allegations of the complaint, there is a dispositive legal issue that precludes relief).

For over a century, Congress has created independent regulatory agencies led by commissions whose members were appointed by the President, confirmed by the Senate, served for fixed terms, and were removable only for cause. *See* Act of Feb. 4, 1887, ch. 104, § 11, 24 Stat. 379, 383 (creating the Interstate Commerce Commission). The Supreme Court—which has never struck down such for-cause removal protections—first approved their creation in *Humphrey's Executor*. Since then, courts have uniformly recognized that, despite repeated

---

argued below that even if the causal-harm requirement does not apply to declaratory judgments, there are persuasive reasons why such relief would be improper here. (Def. Reply in Support of Mot. Dis. at 10, ECF 17). We adhere to those arguments, which the district court would need to consider on remand, should any such remand occur.

efforts to overturn it, *Humphrey's Executor* "still protects any 'traditional independent agency headed by a multimember board.'" *Consumers' Rsch.*, 91 F.4th at 352 (quoting *Seila Law LLC v. CFPB*, 591 U.S. 197, 206 (2020).[21]

Indeed, *Humphrey's Executor* is "binding precedent." *Severino v. Biden*, 71 F.4th 1038, 1047 (D.C. Cir. 2023). As such, Appellants' theory for invalidating the Board Members' removal protections pursuant to Article II does not state a viable claim on the merits.

Accordingly, should the Court reach this issue – which is not necessary in light of Appellants' failure to show causal harm – then, for the reasons given below, the Court should affirm the constitutionality of the Board members' removal protections and remand with instructions to dismiss with prejudice.

---

[21] A*ccord Leachco*, 103 F.4th at 760; *Meta Platforms, Inc. v. FTC*, 723 F. Supp. 3d 64, 87 (D.D.C. 2024); *Loren Cook Co. v. NLRB*, Case No. 6:24-CV-03277-BCW, 2024 WL 5004534, at *5-6 (W.D. Mo. Nov. 27, 2024); *Kerwin*, 2024 WL 4594709, at *7 (W.D. Mich. Oct. 25, 2024); *Alivio Medical Center v. Abruzzo*, Case No. 24-cv-7217, 2024 WL 4188068, at *5-9; *YAPP*, 2024 WL 4119058, at *4-7; *Overstreet v. Lucid USA Inc.*, No. CV-24-01356-PHX-DJH, 2024 WL 5200484, at *7 (D. Ariz. Dec. 23, 2024).

## A. *Supreme Court precedent uniformly supports removal protections for multimember commissions like the Board.*

In *Humphrey's Executor*, the Supreme Court held that members of the Federal Trade Commission (FTC), who were part of a multi-member, decision-making body of experts, could be constitutionally insulated from removal by the President. *Humphrey's Executor,* 295 U.S. at 626. The Court identified features like the FTC commissioners' seven-year, staggered terms as evidence of Congress's intent to "create a body of experts who shall gain experience by length of service," which "would not be subject to complete change at any one time." *Id.* at 624-25. In the Court's view, this structure would logically be served by "length and certainty of tenure." *Id.* at 626.

Relying on *Humphrey's Executor*, Congress created the NLRB less than two months afterwards and modeled it after the FTC. *See* H.R. Rep. 74-1371, at 4 (1935) (stating that the NLRB "is to have a similar status to that of the Federal Trade Commission" and describing express removal protections for Board Members as "desirable in the light of" *Humphrey's Executor*), *reprinted in* 2 NLRB, Legislative History of the National Labor Relations Act, 1935, at 3255 (1949); *Dish Network Corp.*

*v. NLRB*, 953 F.3d 370, 375 n.2 (5th Cir. 2020) (noting that the NLRB and FTC share certain salient features).

Shortly thereafter, in *Wiener v. United States*, 357 U.S. 349 (1958), the Supreme Court inferred removal protections for members of the War Claims Commission, reasoning that the Commission was an "adjudicatory body," *id.* at 356, that performed "tasks [that] require[d] absolute freedom from Executive interference." *Id.* at 353; *see also Morrison v. Olson*, 487 U.S. 654, 691 n.30 (1988) (upholding tenure protections as "necessary to the proper functioning" of "an official performing quasi-judicial functions") (cleaned up). The Court explained in *Wiener* that its holding embraced "[t]he philosophy of *Humphrey's Executor*, in its explicit language as well as its implications." 357 U.S. at 356.

The Supreme Court's more recent removal-protection jurisprudence likewise acknowledges and affirms the core holding of *Humphrey's Executor*. In *Free Enterprise Fund*, the Court invalidated uniquely restrictive, multilevel tenure protections for members of the Public Company Accounting Oversight Board (PCAOB), where it was presumed that the SEC commissioners responsible for removing the

PCAOB members were themselves removable only for cause. *Id.* at 484. The Court expressly acknowledged that "Congress can, under certain circumstances, create independent agencies run by principal officers appointed by the President, whom the President may not remove at will but only for good cause." *Id.* at 483. And the Court notably declined to revisit *Humphrey's Executor*, stating "[t]he point is not to take issue with for-cause limitation in general," *id.* at 483, 501, as prior cases have "upheld limited restrictions on the President's removal power," where "only one level of protected tenure separated the President from an officer exercising executive power." *Id.* at 495.

Critically, the *Free Enterprise* Court assumed that the SEC commissioners could only be removed for-cause. *Id.* at 487. This assumption—underlying the entire *Free Enterprise* removal-protections analysis—makes sense only if removal protections for the SEC commissioners are constitutional. And the assumption was hardly inconsequential; without it, the PCAOB members would not have been as insulated from Presidential oversight and control. *See id.* at 484. In holding that the multilevel removal protections for the PCAOB violate separation-of-powers principles, the Court reasoned that such a

structure prevents the President from "hold[ing] the Commission[ers] fully accountable for the Board's conduct, to the same extent that he may hold the Commission accountable for everything else that it does." *Id.* at 496; s*ee also id.* at 530 (Breyer, J., dissenting) (citing *Humphrey's Ex'r*, 295 U.S. at 602) (noting that the majority opinion "concedes that the President's control over the Commission is constitutionally sufficient"). The Court's holding in *Free Enterprise Fund* is therefore based upon this key point: even though the SEC commissioners are protected from at-will removal, the President can still hold them accountable consistent with his Article II responsibilities.

Then, in *Seila Law LLC*, 591 U.S. 197 (2020), in striking down for-cause removal protections for the Director of the CFPB, the Court observed the constitutionality of "expert agencies led by a *group* of principal officers removable by the President only for good cause." *Id.* at 204. (emphasis in original). The Court contrasted the CFPB's single-Director structure with such multimember agencies, asserting that the CFPB's Director "cannot be described as a 'body of experts' and cannot be considered 'non-partisan' in the same sense as a group of officials drawn from both sides of the aisle." *Id.* at 218 (quoting *Humphrey's*

*Ex'r*, 295 U.S. at 624). The Court however suggested a fix for the CFPB's single-head problem; that is, Congress could "convert[] the CFPB into a multimember agency." *Id.* at 237. This embrace of *Humphrey's Executor* is especially noteworthy since the petitioner had urged the Court to overrule that decision. *See* Br. for Pet'r, *Seila Law*, 2019 WL 6727093, at *31 (Dec. 9, 2019).

*Collins* followed this trend while addressing another challenge to a single-director structure. In finding that the removal protections of the FHFA's Director were unconstitutional, the Court explained that "the nature and breadth of an agency's authority is not dispositive in determining whether Congress may limit the President's power to remove its head." *Collins*, 594 U.S. at 251-52. The Court rejected the notion that FHFA's "more limited" authority distinguished it from the CFPB structure analyzed in *Seila Law*, *id.* at 251, because the constitutionality of removal protections does not hinge on an assessment of an agency's functions. The result in *Collins* thus rested squarely on the fact that the FHFA, like the CFPB in *Seila Law*, was led by a single Director with a five-year term. *Id.* at 252.

By contrast, the Board comfortably fits the approved multi-member structure. Its five-seat composition is unlike the single-director format that troubled the Court in *Seila* or *Collins*. The Board is, instead, a traditional independent agency headed by a multimember board, which has been consistently endorsed by the Supreme Court.

### B. *Appellants' reliance on a "substantial executive power" test is legally untenable.*

Appellants contend the NLRB does not fit within the rule of *Humphrey's Executor* because its members wield "substantial executive power." (Appellants' Br. 38). This contention hinges on the implicit assertion that *Seila Law* radically upended decades of precedent and practice by supplanting *Humphrey's Executor* with a new legal rule that allows principal officers serving on multi-member boards or commissions to receive removal protections only if they do not exercise "substantial executive power." That assertion cannot be true. *Seila Law* expressly disavowed that it was disturbing any of the Court's prior precedents. The Court struck down a removal protection in the "novel context" of an agency headed by a single individual, and explicitly stated that its decision did "not revisit . . . prior decisions allowing certain limitations on the President's removal power." 591 U.S. at 204.

Indeed, the Fifth Circuit recently rejected the central premise of Appellants' argument in *Consumers' Research*. In that decision, the court of appeals addressed a challenge to the removal protections—identical to those of Board members—for commissioners on the Consumer Product Safety Commission (CPSC). *Consumers' Rsch.,* 91 F.4th at 346–47. *Compare* 15 U.S.C. § 2053(a), *with* 29 U.S.C. § 153(a). The *Consumers' Research* Court broadly held that *Humphrey's Executor* "still protects *any* 'traditional independent agency headed by a multimember board.'"91 F.4th at 352 (quoting *Seila Law*, 591 U.S. at 207) (emphasis added). Notably, the *Consumers' Research* Court found that the CPSC "exercises substantial executive power (in the modern sense)," *id.* at 353–54, and listed relevant examples of such power, *id.* at 346 (citing CPSC's "authority to promulgate safety standards and to ban hazardous products" as well as its "power to launch administrative proceedings, issue legal and equitable relief, and commence civil actions in federal courts," including actions seeking injunctive relief and even civil monetary penalties). Nonetheless, the *Consumers' Research* Court found that these powers did not affect the validity of the CSPC

commissioners' removal protections.[22] *See also Illumina, Inc. v. FTC*, 88 F.4th 1036, 1047 (5th Cir. 2023) (rejecting attempt to limit *Humphrey's Executor* only to the FTC as it existed in 1935).

In assessing the continuing vitality of *Humphrey's Executor* and rejecting arguments nearly identical to the ones Appellants raise here, the Fifth Circuit in *Consumers' Research* identified three key characteristics of the CPSC that make its removal restrictions distinguishable from those that the Supreme Court declared unconstitutional in *Seila Law*. All three features apply with equal force to the NLRB.

First, the NLRB, founded in 1935 and modeled after the FTC, has "historical precedent" to support it. *Consumers' Rsch.,* 91 F.4th at 354 (quoting *Free Enterprise,* 561 U.S. at 505). The NLRB, therefore, lacks what the Fifth Circuit considered as "the most telling indication of the severe constitutional problem." *Id.* Second, the NLRB, a traditional

---

[22] In comparison, the Board's authority is significantly less robust. Although the Board also has rulemaking authority, it cannot initiate administrative proceedings, seek civil monetary penalties, or provide any other form of nonremedial relief. 29 U.S.C. § 160(a), (c). In addition, the Board's orders are not self-enforcing. *Dish Network*, 953 F.3d at 375 n.2. As such, the justification for upholding the removal protections at issue here is at least as strong as in *Consumers' Research*.

independent agency run by a multimember board, does not have leadership by a single director who is shielded from removal by the President, which was "the defining feature that the Supreme Court in *Seila Law* relied on to hold the CFPB unconstitutional." *Id.* Third, the President "ha[s] the opportunity to shape [the NLRB's] leadership and thereby influence its activities" through a staggered Board member appointment schedule and through the budgetary process. *Id.* at 354-355 (cleaned up) (noting that the staggered appointment schedule and lack of funds outside the appropriations process meant that the President could influence the CPSC's activities).

The Tenth Circuit reached the same conclusion in *Leachco, Inc. v. CPSC*, 103 F.4th 748, holding that "*Humphrey's Executor* remains good law." *Id.* at 762. That circuit, following the Fifth Circuit's reasoning in *Consumers' Research*, likewise concluded that the CPSC fit within the parameters of *Humphrey's Executor*. *Id.* at 760-63. Rather than "generate a split with the Fifth Circuit and depart from the general weight of authority," the Tenth Circuit rejected arguments that the removal protections of CPSC commissioners were unconstitutional. *Id.* at 763.

Appellants disagree with these persuasive, well-reasoned opinions from the Fifth and Tenth Circuits. They insist that *Humphrey's Executor* does not cover the Board because the Board exercises "substantial executive power" through its adjudicative, policymaking, and prosecutorial authority. (Appellants' Br. 35). As set out in *Consumers' Research,* however, it is an agency's structure, not its functions, that is most significant in assessing whether the President's removal authority passes constitutional muster. An agency with tenure-protected leaders can exercise even substantial executive power if it has a historical pedigree, is run by a multimember board of experts, and boasts organizational features that permit the President to shape its leadership and influence its activities. *See discussion,* above at 55*; see also Illumina*, 88 F.4th at 1047 ("[T]he question of whether the FTC's authority has changed so fundamentally as to render *Humphrey's Executor* no longer binding is for the Supreme Court, not us, to answer.").

But even if exercising "substantial executive power" were the appropriate test, Appellants' argument still fails because they cannot show that Board members somehow exercise more "substantial"

executive power than either FTC commissioners whose removal protections are indisputably valid or CPSC commissioners whose removal protections have been approved of by the Fifth and Tenth Circuits. Undeterred, Appellants insist that the Board "'issue[s] final regulations, oversee[s] adjudications . . . and determine[s] what penalties to impose on private parties'," purportedly "'without meaningful supervision.'" (Appellants' Br. 38 (quoting *Seila Law* 591 U.S. at 225)).

These points are unavailing. While the Board has rulemaking authority, 29 U.S.C. §§ 156, 159(c), so too do the CPSC and the FTC. Thus, rulemaking authority does not place an agency outside the bounds of *Humphrey's Executor*.

Appellants make much of the Board's adjudicatory role under the NLRA (Appellants' Br. 36-37) but their concern is similarly baseless. Indeed, the Board is "unique" among its regulatory peers in the *circumscribed* nature of its functions, *NLRB v. FLRA*, 613 F.3d 275, 281 n.* (D.C. Cir. 2010), in at least two ways. First, the Board depends entirely on outside entities to file ULP charges or representation petitions before it can engage in adjudication. *See generally* 2 *The*

*Developing Labor Law: The Board, the Courts, and the National Labor Relations Act* ch. 31.III.B (John E. Higgins, Jr., et al., eds., 7th ed. 2017). Second, the NLRB's politically accountable General Counsel is independent of the Board and is ultimately responsible for all ULP investigations and prosecutions. *See* 29 U.S.C. § 153(d); *Exela*, 32 F.4th at 445 (President lawfully removed General Counsel without cause). Because the removable-at-will General Counsel performs the "quintessentially prosecutorial functions" of the Agency, *Exela*, 32 F.4th at 443, the Agency's structure is—if anything—*less* concerning from a separation-of-powers perspective.

While Appellants also describe the Board as having "robust" enforcement authority with the power to order "daunting" monetary relief against private parties, (Appellants' Br. 35), their characterizations lack substance. The Board's orders are remedial in nature, are not self-enforcing, and can be set aside by a reviewing court before a respondent ever has to comply. 29 U.S.C. § 160(e). Nor can the Board order civil penalties. *Cf. Seila Law,* 591 U.S. at 206 ("CFPB may seek . . . civil penalties of up to $1,000,000 (inflation adjusted) for each day that a violation occurs."); *see also* n.22, above.

To bolster their position, Appellants rely on the Board's sparingly exercised injunction authority under Section 10(j) of the NLRA, 29 U.S.C. § 160(j).[23] Section 10(j) allows the Board to seek a temporary injunction in district court pending the Board's resolution of an unfair-labor-practice case. Appellants refer to this authority as "prosecutorial." (Appellants' Br. 38). This authority, however, is insufficient to remove the Board from the scope of *Humphrey's Executor*. The FTC and the CPSC, both validly structured agencies, have the power to authorize similar injunction lawsuits. *See* 15 U.S.C. § 53(b); 15 U.S.C. § 2064(g). Therefore, even if it were necessary to "weigh the relative importance of the regulatory and enforcement authority of disparate agencies"—a task that courts are "not well-suited" to perform, *Collins*, 594 U.S. at 253, — Board members' removal protections would still fall within the binding authority of *Humphrey's Executor*.

---

[23] In fiscal year 2023, out of 19,869 ULP charges filed by the public, the Board granted authorization to file a 10(j) petition only 14 times, resulting in a total of seven petitions actually filed in court. NLRB, *NLRB Performance and Accountability Report, FY 2023*, at 27, 86, https://www.nlrb.gov/sites/ default/files/attachments/pages/node-130/nlrb-fy2023-par-508.pdf.

## C. *Appellants' remaining arguments for why* Humphrey's Executor *does not apply are unavailing.*

Appellants provide a grab bag of arguments to distinguish *Humphrey's Executor*, but none aid their cause. They insist it matters that the Board is not statutorily required to be balanced along partisan lines. (Appellants' Br. 39). While it is true that the NLRA itself does not set a cap on the number of Board Members from a particular party like the FTC Act does, historically, Presidents have made Board appointments consistent with the general principle that members of the President's party will occupy a bare majority of the seats on a multimember commission. *See* Brian D. Feinstein & Daniel J. Hemel*, Partisan Balance with Bite*, 118 Colum. L. Rev. 9, 32 (2018) (classifying the NLRB as an agency with a partisan-balance requirement "based on a firmly entrenched norm favoring partisan balance on that body"); *see also id.* at 55 (finding "little to suggest that the difference between the NLRB's partisan balance convention and the statutory [partisan-balance requirements] applicable to other agencies has any effect on ideological composition").

As noted above, courts have been clear that, when considering the applicability of the *Humphrey's Executor* exception, "[p]erhaps the most

telling indication of a severe constitutional problem with an executive entity is a lack of historical precedent to support it." *Seila Law*, 591 U.S. at 220 (cleaned up); *Consumers' Rsch.*, 91 F.4th at 354 ("historical pedigree matters"). Here, historical precedent shows that Presidents of both parties have for decades appointed no more than three Board Members from the same party—and this practice continues to date.[24]

Appellants next drum up another equally unavailing argument, specifically that because Board terms are staggered and last five years, "the President may appoint five Board Members from his own party to completely hamper the next President" who would need "at least three years" to secure a Board majority. (Appellants' Br. 39-40). This argument is not supported by practice or by the statute. As noted above, Presidents have consistently maintained bipartisan membership on the Board.

---

[24] On May 23, 2024, recognizing that the Board is "required, by … longstanding practice, to include bipartisan membership," President Biden announced the nomination of Joshua L. Ditelberg to serve as a Republican member of the Board. President Biden Announces Nominees, The White House, https://www.whitehouse.gov/briefing-room/statements-releases/2024/05/23/president-biden-announces-nominees/ (May 23, 2024). Under the Rules of the Senate, Mr. Ditelberg's nomination was returned to the President on January 3, 2025, when Congress adjourned.

And Appellants' hypothetical about an outgoing President packing the Board with political allies before a new President takes office is, at best, a theoretical and counterfactual slippery-slope argument. (Appellants' Br. 39-40). But as Appellants admit, the slope they construct isn't all that slippery. Three Board vacancies, enough to form a majority, must always arise no later than the third year of any President's term. 29 U.S.C. § 153. In the meantime, that provision also guarantees a new President the opportunity to appoint "other leaders— such as a chair or fellow [Board] members" or, notably, a new General Counsel—"who can serve as a check on the [inherited majority's] authority and help bring the agency in line with the President's preferred policies." *Seila Law*, 591 U.S. at 225 (cleaned up). Appellants' supposition that a President could be "faced with a completely partisan and oppositional Board," (Appellants' Br. 40), is therefore off the mark and does not come close to justifying the unprecedented relief they seek.

Appellants also attempt to distinguish *Humphrey's Executor* by claiming that Board Members' removal protections are "stricter" than those at issue there, as Board Members can be removed "for neglect of duty or malfeasance in office," 29 U.S.C. § 153(a), but not inefficiency.

(Appellants' Br. 40). While Congress could have added "inefficiency" as an additional ground for Board Member removal, as it did to address the specific problem of patronage hires in other offices, this further ground goes beyond what is required by the Constitution's Take Care Clause. *See YAPP USA Auto. Sys., Inc. v. NLRB*, 2024 WL 4119058, at *15 n.4 (E.D. Mich. Sept. 9, 2024) (citing Jane Manners & Lev Menand, *The Three Permissions: Presidential Removal and the Statutory Limits of Agency Independence*, 121 Colum. L. Rev. 1, 68–69, n.383 (2021) (explaining that the absence of inefficiency as a ground for removal does not unconstitutionally interfere with the President's authority)); *accord Alivio*, 2024 WL 4188068, at *11 n.5; *Kerwin,* 2024 WL 4594709 at *7. Neglect of duty and malfeasance in office are listed as the sole grounds for removal of various other federal officers, *see* Manners & Menand, *supra*, at 69, to whom *Humphrey's Executor* applies—including the very CPSC commissioners whose removal protections the Fifth Circuit upheld in *Consumers' Research. See Consumers' Rsch.*, 91 F.4th at 346 (reviewing statutory language and remarking that CPSC and FTC "are twins" because commissioners of both agencies can be removed only for cause); *see also Leachco,* 103 F.4th at 762–63.

Finally, Appellants' argument that *Humphrey's Executor* is "limited to its facts" (Appellants' Br. 47) and applies solely to the FTC as it existed in 1935 has been repeatedly rejected. As the Fifth Circuit just explained just a year ago, even if "the FTC's powers may have changed since *Humphrey's Executor* was decided, the question of whether the FTC's authority has changed so fundamentally as to render *Humphrey's Executor* no longer binding is for the Supreme Court, not us, to answer." *Illumina*, 88 F.4th at 1047; *see also Meta Platforms*, 723 F. Supp. 3d at 87 (rejecting argument that FTC commissioners' removal protections are now constitutionally invalid); *FTC v. Am. Nat. Cellular, Inc.*, 810 F.2d 1511, 1514 (9th Cir. 1987) (rejecting argument that *Humphrey's Executor* was no longer controlling because FTC's enforcement provisions had changed).

In any event, the premise of Appellants' argument—that the FTC in 1935 did not exercise substantial executive power—is mistaken. Congress charged the FTC with a "roving mandate to prevent . . . individuals and corporations alike from engaging in 'unfair methods of competition in commerce,'" granting it "broad authority" to restrain such conduct. *Collins*, 594 U.S. at 287-88 (Kagan, J., concurring) (quoting

*Humphrey's Ex'r*, 295 U.S. at 620); *see* Pub. L. No. 63-203, §§ 5, 6(g), 38 Stat. 717, 719–20, 722 (1914) (authorizing the FTC to issue cease-and-desist orders, to bring enforcement actions, and to issue regulations). Thus, despite Plaintiffs' attempts to cast the "1935 FTC" as a feeble bygone of history, that entity plainly exercised what modern jurists would regard as substantial executive power.

Ultimately, it does not matter whether the NLRB is more or less powerful than the 1935 FTC. (*Contra* Appellants' Br. 34, 35, 37, 38, 39, 40, 43, 44, 48). To fall within *Humphrey's Executor*'s permission for tenure protections, the Board does not need to be weaker than the 1935 FTC, nor does it need to show that its powers are indistinguishable from those of the 1935 FTC. Rather, for the Board's tenure protections to pass constitutional muster, it is enough to show that the Board fits the mold of a "traditional independent agency headed by a multimember Board," *Seila Law*, 140 S. Ct. at 2193, and that the Board is structured as the type of agency that the Court blessed in *Humphrey's Executor*. As set forth above, the Board has made this showing, and Appellants cannot overcome it.

* * *

Because *Humphrey's Executor* remains good law and applies not just to the FTC but to "dozens of other agencies" like the NLRB, *Consumers' Rsch.*, 91 F.4th at 352, Board members' removal protections are constitutional. *Id.* at 356 ("*Humphrey's* does settle the question."). *Humphrey's Executor* is dispositive and, as such, Appellants do not have a viable legal theory that could have survived the NLRB's motion to dismiss.

## CONCLUSION

This Court should affirm the dismissal without prejudice of the Amended Complaint's request for injunctive relief. The judgment should be modified to a dismissal with prejudice in all other respects

Respectfully submitted,

| | |
|---|---|
| JENNIFER A. ABRUZZO<br>*General Counsel* | KEVIN P. FLANAGAN<br>*Deputy Assistant General Counsel* |
| JESSICA RUTTER<br>*Deputy General Counsel* | CHRISTINE FLACK<br>*Supervisory Trial Attorney* |
| NANCY E. KESSLER PLATT<br>*Associate General Counsel* | MARIANNE L. BOWERS<br>*Trial Attorney* |
| DAWN L. GOLDSTEIN<br>*Deputy Associate General Counsel* | /s/ Padraic J. Lehane<br>PADRAIC J. LEHANE<br>*Trial Attorney* |

National Labor Relations Board
Contempt, Compliance, and
 Special Litigation Branch
1015 Half Street, SE, 4th Floor
Washington, D.C. 20003

Tel: (202) 793-1017
Fax: (202) 273-4244
Paddy.Lehane@nlrb.gov

Dated: January 8, 2025
 Washington, D.C.

## CERTIFICATE OF SERVICE

I hereby certify that copies of the foregoing brief were filed

electronically with this Court's CM/ECF system on this date, which will

send an electronic notice to all registered parties and counsel.

/s/ Padraic J. Lehane
PADRAIC J. LEHANE
   *Trial Attorney*
National Labor Relations Board
1015 Half Street, SE, 4th Floor
Washington, D.C. 20570
Tel: (202) 273-4400
paddy.lehane@nlrb.gov

Dated: January 8, 2025

Washington, D.C.

# CERTIFICATE OF COMPLIANCE

The National Labor Relations Board certifies that this document complies with the typeface, type-style, and length requirements in D.C. Cir. Rule 32(e)(1) and Federal Rules of Appellate Procedure 32(a)(2)-(7) because it contains 12,991 words, excluding those exempted by Federal Rule of Appellate Procedure 32(f), proportionally-spaced, 14-point Century font, using Microsoft Word for Office 365 word-processing software.

/s/ Padraic J. Lehane
PADRAIC J. LEHANE
  *Trial Attorney*
National Labor Relations Board
1015 Half Street, SE, 4th Floor
Washington, D.C. 20570
Tel: (202) 273-4400
Paddy.Lehane@nlrb.gov

Dated: January 8, 2025
        Washington, D.C.